UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**ENVISIONTEC, INC.,**
a Michigan Corporation,

       Plaintiff,

vs.

**STAX3D, INC.,** a Arizona Corporation, and
**JASON YOCUM**, an individual, as

       Defendants.

Case No.

Hon.

_____

# COMPLAINT WITH JURY DEMAND

Plaintiff, EnvisionTEC, Inc. (hereinafter "Plaintiff"), hereby brings this Complaint against Defendant, Stax3D, Inc. and Jason Yocum (hereinafter collectively referred to as "Defendants"), and states as follows:

## INTRODUCTION

1. This is a breach of contract case arising from a contract entered into by the parties on June 12, 2017. *Exhibit 1*, Distributor Agreement ("the Contract").

2. Under the terms of the Contract, Plaintiff appointed Defendants to be an exclusive distributor of Plaintiff's 3D printing systems, print materials, accessories and other consumables, referred to in the contract as "Products." *Id*. ¶ 1, 1.1.

3. Under the Contract, Plaintiff sold its Products to Defendants for the purpose of resale to Defendants' customers or end-users or for the Defendants' own use to create benchmarks. *Id.* ¶ 1.2.

4. Although Plaintiff delivered Products to Defendants, Defendants failed to pay for all of the Products ordered and delivered.

5. Upon information and belief, Defendants have sold the Products delivered by Plaintiff, but refuses to pay Plaintiff for the Products.

6. To date, Plaintiff has released approximately $86,000.00 in Products to Defendants, which Defendants refuse to pay for.

7. In addition to the $86,000.00 for Products, Plaintiff also seeks to recover service charges for late payments, attorney fees, and costs under the terms of the Contract.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 diversity jurisdiction.

9. This Court has personal jurisdiction over Defendants because the Contract was entered into in the State of Michigan and specifically calls for disputes to be resolved in this Court. *Exhibit 1*, ¶ 4, 4.2.

10. This Court has personal jurisdiction over Defendants because Defendants, at all relevant times, conducted and continues to conduct business

within the State of Michigan.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants conduct business in this district and a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

12. Plaintiff is a Michigan corporation, with its headquarters located in Dearborn, Michigan.

13. For more than 15 years, Plaintiff "has been delivering desktop and production 3D printers and materials that deliver best-in-class results." *See*, https://envisiontec.com/ (last visited 11/29/19).

14. Plaintiff "is a leading global provider of professional-grade 3D printing solutions. [Plaintiff's] company invents, develops, manufactures and sells 3D printers and proprietary materials worldwide." *See*, https://envisiontec.com/about-envisiontec/ (last visited 11/29/19).

15. Defendant, Stax3D, Inc., is an Arizona corporation with its headquarters located in Gilbert, Arizona. Defendant's service of process address is 1497 E Baseline Rd., #101, Gilbert, Arizona 85233.

16. Defendant, Jason Yocum, is the founder and CEO of Stax3D, Inc. and is also listed as the registered agent for Stax3D, Inc.

17. Upon information and belief, Defendant, Jason Yocum, is a resident of

the state of Arizona.

18.   At all relevant times, Defendant, Jason Yocum, exercised complete control over the business operations and dealings of Defendant, Stax3D, Inc. Defendant, Jason Yocum, executed the Contract at issue herein and exercised complete control over the compliance, or non-compliance, with the terms of the Contract.

19.   According to Defendant Jason Yocum's LinkedIn Profile, "Stax3D is a new business concept providing consumers a full service 3D printing store.  The retail stores will incorporate both business and hobbyist pursuits, while serving as technical and creative support.  Stax3D will offer a retail and educational space for those working on, or interested in, 3D printing projects and applications utilizing the latest in 3D printing technologies on the market.  Our intent is to be a showcase and retail location for 3D printers, supplies, and products, as well as offer scanning and printing of items.  We intend to show the consumer the enormous possibilities of 3D printers first-hand because currently, online is the only place to view multiple printer brands."  ***Exhibit 2***, Yocum LinkedIn Profile.

20.   According to Defendants' website, "it is [Defendants'] mission to innovate highly effective cost, time, and quality solutions for clients, Kindergarten through Business, and empower our clients by utilizing advanced 3D technologies." *See*, https://stax3d.com/ (last visited 11/25/19).

21. Defendants offer a variety of services to their customers all of which involve the use or resale of 3-D printing machines. For example, Defendants' photogrammetry studio in Gilbert, Arizona "develops high resolution 3D imagery," which includes "a 3D printable output that will then be used to produce 3D figurines using our state of the art color 3D printer." *See*, https://stax3d.com/full-body-scan/ (last visited on 11/25/19).

22. In addition to providing consumers with 3D printing services, Defendants also operate as a distributor for 3D printing machines and equipment, as set forth in the Contract.

## GENERAL ALLEGATIONS

23. As stated above, Defendants offer 3D printing services to individual consumers and businesses. According to Defendant, "[t]he concept for the for the development of this technology was to utilize an acrylic-based material (known as photopolymer) in a liquid state, place it in a vat and hit it with a UV laser beam. When the light of the laser hit the exposed portions of polymer the hope was that it would solidify into a solid piece of plastic. The concept was to develop the shape of your 3D-model design into a tangible item." ***Exhibit 3***, LinkedIn Business Statement from Yocum.

24. Defendant does not manufacture 3D printing equipment to conduct the process outlined in the preceding paragraph, and instead, obtains the equipment from

third parties, such as Plaintiff.

25. On June 12, 2017 Plaintiff and Defendants entered into a contract whereby, Plaintiff would manufacture 3D printers and equipment for Defendants to sell or otherwise use for its own purposes.

26. Under the terms of the Contract, "[a]ll orders for Products shall be made by submitting a written purchase order ('PO') to EnvisionTEC. [Defendants] may place a preliminary order orally or electronically, but it must submit a valid PO within three (3) days thereafter." *Exhibit 1*, ¶ 4.2.

27. Furthermore, "[u]nless [Defendants] establish a credit line with EnvisionTEC, all payment (including any freight, taxes or other applicable costs prepaid by EnvisionTEC) is due prior to shipment." *Id*. ¶ 4.4.

28. "[Defendant] may not suspend, set off payment or otherwise deduct any amounts it claims it is owed by EnvisionTEC." *Id*.

29. "Any invoice amount not paid when due is subject to a service charge of 1.5% per month." *Id*. ¶ 4.5.

30. On or about June 28, 2019, Defendant submitted a written purchase order to Plaintiff for the manufacturing and delivery of a 3D printer. As was standard practice, Plaintiff requested a 50% down payment on the printer to begin production.

31. On July 8, 2019, Defendant wrote Plaintiff and stated they were

working on getting the 50% down payment.

32.   On July 19, 2019, Defendant was placed on notice that the printer order was placed on hold due to Defendant's inability to make the 50% down payment. *Id*.

33.   On August 1, 2019, due evidently to a shortage of funds, Defendant wrote Plaintiff and stated "can you agree to release the printer that we have awaiting for our customer, PXG with the next lot of builds …[i]f so this is what we can commit too [sic]: August 5th, 2019 - $5,000; August 19th, 2019 - $5,000; September 30th, 2019 - $20,000; October 30th, 2019 - $25,000; and November 30th, 2019 Balance.  *Exhibit 4*, Payment Plan Email Correspondence.

34.   The payment plan on Defendants existing balance was acceptable to Plaintiff, but Plaintiff refused to release the printer (as requested by Defendants) until Defendants' outstanding balance with Plaintiff was paid in full.

35.   Subsequently, Defendant failed to make any payments to Plaintiff, and, to date, owes Plaintiff $82,197.50 under the Contract for Products manufactured and shipped by Plaintiff to Defendant.

36.   Upon information and belief, Defendant has sold the Products they received from Plaintiff but never paid for.   Alternatively, Defendant has unlawfully converted the Products received for their own business or personal use.

37.   The Contract provides for a 1.5 % service charge per month on all outstanding amounts, in this case, no less than $1,232.96 per month.

38. Additionally, Plaintiff seeks "all costs and fees incurred, including reasonable attorneys' fees" as provided by the Contract. *Exhibit 1*, ¶ 13b.

## COUNT I
## BREACH OF CONTRACT

39. Plaintiff re-alleges and incorporates all paragraphs herein.

40. As set forth herein, the parties to this lawsuit had a valid, written, and enforceable contract in place for the sale of Plaintiff's Products. The Contract is attached hereto as ***Exhibit 1***.

41. Defendants breached their duties under the Contract by submitting purchase orders to Plaintiff for Products, then failing to pay for said Products.

42. Defendants also breached their duty of good faith and fair dealing by luring Plaintiff into manufacturing and shipping goods, which Defendants were incapable of paying for or had no intention of paying for.

43. To date, Defendants remain in breach of the Contract by refusing to pay Plaintiff for the Products they received, but never paid for.

44. As a direct and proximate result of Defendants' material breach of the Contract, Plaintiff has suffered damages.

## COUNT II
## UNJUST ENRICHMENT

45. Plaintiff re-alleges and incorporates all paragraphs herein and further alleges as follows.

46. At all times relevant to this action, Defendants promised to pay Plaintiff for the Products manufactured and delivered by Plaintiff, but later failed to pay Plaintiff, despite having received the benefits of the Products.

47. Plaintiff relied upon Defendants' promise for the payment of the Products manufactured and shipped to Defendants, and Plaintiff performed by manufacturing and delivering the Products ordered by Defendants.

48. By not paying Plaintiff as agreed, Defendants were unjustly enriched.

49. Defendants received and accepted the above-referenced Products from Plaintiff and enjoyed the benefits derived therefrom.

50. Upon information and belief, Defendants used the Products manufactured and delivered to Defendants to finance their various business expenditures.

51. Defendants have been unjustly enriched by the retention of monies received pursuant to the services performed by Plaintiff at Defendants' request, without having compensated Plaintiff for the same.

52. Plaintiff suffered detriment as a result of Defendants' failure to compensate them for the Products, in that Plaintiff has lost the money, equipment, and labor that was put into manufacturing the Products for Defendants. Furthermore, Plaintiff was deprived of the ability to utilize their time, effort and their resources in other profitable manners.

53. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, loss of profits, material, and labor and the added expenses associated with the prosecution of this litigation.

WHEREFORE, Plaintiff requests the following relief:

   a. An Order awarding Plaintiff $82,197.50 under the Contract to account for the outstanding Products manufactured and shipped to Defendants;

   b. An Order awarding Plaintiff all service charges permitted under the Contract;

   c. An Order for all costs and fees, including attorney fees, under the terms of the Contract;

   d. An Order stating Defendants were unjustly enriched in the amount of $82,197.50, which also requires all such sums to be returned to Plaintiff; and

   e. All other relief the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

*[The signature of Counsel appears on the following page.]*

Dated: December 3, 2019				Respectfully submitted,

						*/s/ Charles R. Ash, IV*
						Charles R. Ash, IV (P73877)
						Matthew L. Turner (P48706)
						SOMMERS SCHWARTZ, P.C.
						One Towne Square, Suite 1700
						Southfield, Michigan 48076
						248-355-0300
						crash@sommerspc.com
						mturner@sommerspc.com

						*Trial Counsel for Plaintiff*